IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. RAWDIN, M.D. | : | CIVIL ACTION |
| 417 Merion Place | : | |
| Merion Station, PA 19066 | : | No. |
| | : | |
| v. | : | |
| | : | |
| THE AMERICAN BOARD OF PEDIATRICS | : | |
| 111 Silver Cedar Court | : | |
| Chapel Hill, NC 27514 | : | |

## COMPLAINT

1. This action is brought under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, specifically 42 U.S.C. § 12189 and the U.S. Department of Justice implementing regulations found at 28 C.F.R. § 36, *et seq.*, specifically 28 C.F.R. § 36.309.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4) and 42 U.S.C. §§ 2000a-3(a) and 12188.

3. The request by Plaintiff for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2201.

4.     Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district and Plaintiff resides in this district.

**PARTIES**

5.     Plaintiff, David E. Rawdin ("Plaintiff"), is an individual with a significant disability who resides at 417 Merion Place, Merion Station, PA 19066.

6.     Defendant, the American Board of Pediatrics (the "ABP"), is an independent, national organization which has a registered address at 111 Silver Cedar Court, Chapel Hill, NC 27514-1513.

7.     The ABP is the sole organization responsible for certifying physicians as specialists in the field of general pediatrics.

8.     To obtain board certification in general pediatrics ("Certification") a physician must under ABP's existing rules:

   (a)     Graduate from a medical school that has been accredited by the Liaison Committee on Medical Education or the American Osteopathic Association;

   (b)     Complete three years of pediatric training in programs accredited by the Accreditation Council for Graduate Medical Education on the advice of the Review Committee for Pediatrics;

2

(c)     Possess a valid, unrestricted license to practice medicine in at least one state or territory of the United States;

(d)     Pass a peer and patient review; and

(e)     Pass an approximate 330 question multiple choice exam known as the General Pediatrics Certifying Examination (the "Exam").

9.      The ABP plans, prepares, administers, controls and scores the Exam and reviews all applications submitted by those physicians seeking Certification.

10.     The ABP is subject to the nondiscrimination and modification requirements of Title III of the ADA, particularly the requirement that they provide an alternative evaluation process for physicians with disabilities seeking to become board certified in pediatrics.

**FACTS**

11.     In 1987, Plaintiff was diagnosed with Posterior Fossa Ependymoma, a brain tumor which arose in the tissue of Plaintiff's central nervous system in the fourth ventricle.

12.     Plaintiff underwent brain surgery and several series of chemotherapy and radiation therapy to remove the tumor.

13.     Following his surgery and treatment Plaintiff began to experience significant difficulty in passing multiple choice examinations; despite this difficulty, however, Plaintiff

completed and graduated from Franklin & Marshall College in 1990 and was accepted into the Temple University School of Medicine.

14.     In 1994, Plaintiff graduated the Temple University School of Medicine and was accepted as a general surgery resident at the Graduate Hospital in Philadelphia, Pennsylvania.

15.     While in medical school and even after his matriculation, Plaintiff continued to experience significant difficulty with taking and passing multiple choice examinations, particularly the United States Medical Licensing Examination ("USMLE"), an examination which is necessary for a potential physician to obtain a license to practice medicine in the United States.

16.     The USMLE consists of three "Steps" each of which include multiple choice examinations.  Plaintiff struggled with taking USMLE and failed to pass Step III three times.

17.     Suspecting that something was wrong, in 1996, Plaintiff was evaluated by Laura Slap-Shelton, Ph.D., a neuropsychologist.

18.     Dr. Slap-Shelton concluded that as a result of the brain tumor and surgical resection, radiation and chemotherapy, Plaintiff sustained a cognitive disability whereby his memory retrieval system was negatively impacted; this cognitive disability specifically impaired Plaintiff's verbal retrieval, visual memory and his visual fine motoring function.

19.     Dr. Slap-Shelton further opined that Plaintiff's cognitive disability was only readily apparent in taking multiple choice tests, and did not impact him clinically.

20.     However, in 1996, while in the second year of his general surgery residency at the Graduate Hospital in Philadelphia, Pennsylvania, the Posterior Fossa Ependymoma recurred and another resection was required.

21.     Plaintiff underwent another surgical resection.

22.     After the second resection and the multiple complications stemming therefrom, Plaintiff continued to pursue a career as a physician, but changed his specialty from general surgery to general pediatrics.

23.     In 1999, Plaintiff again applied to take Step III of the USMLE, but this time requested accommodations for the test, which were granted.  A true and correct copy of the November 29, 1999 letter from the Federation of State Medical Boards of the United States, Inc. is attached hereto as Exhibit "A" and made a part hereof.

24.     Plaintiff passed Step III of the USMLE with the accommodations and attained licensure to practice medicine in Pennsylvania in 2000.

25.     In 2000, Plaintiff became a pediatric resident at Albert Einstein Medical Center.

26.     Plaintiff completed his pediatric residency and, in July 2003, Plaintiff started practicing clinically as a pediatrician in the Neonatology Department of the Children's Hospital of Philadelphia ("CHOP").

27.     While at CHOP Plaintiff became the Assistant Director of CHOP's nursery, held a faculty post and was a part of the Academic Clinician Tract at the University of Pennsylvania School Of Medicine.

28.     During his tenure at CHOP, Plaintiff cared for approximately 10,000 newborns and was free from any negative incidents or malpractice claims.

29.     Pursuant to the By-Laws of CHOP, any physician employed with the hospital must be board certified in his/her specialty within five years of employment.

30.     Plaintiff met all of the clinical requirements for Certification set forth in paragraph 8 above, except that Plaintiff could not pass the Exam.

31.     After failing the Exam for a second time, Dr. Slap-Shelton reevaluated Plaintiff in October 2007.

32.     Dr. Slap-Shelton found that Plaintiff's cognitive disability had worsened, making it substantially more difficult for Plaintiff to pass multiple choice examinations.   Dr. Slap-Shelton again found, however, that Plaintiff's disability did not have any impact on his clinical ability to treat patients.

33.     Plaintiff again attempted to take the Exam in late 2008 and failed for a third time

34.     In the fall of 2009, CHOP allowed Plaintiff one final attempt to pass the exam, however, Plaintiff again failed the Exam.

35.     As a result of failing the Exam, Plaintiff lost his employment with CHOP in January 2010.

36.     On April 28, 2011, Plaintiff applied to take the Exam with accommodations but again requested that the ABP provide an alternate method of evaluating Plaintiff for Certification other than the Exam.   A true and correct copy of the April 28, 2011 letter is attached hereto as Exhibit' B" and made a part hereof.

37.     On May 2, 2011 Dr. Slap-Shelton sent a letter to the ABP recommending that Plaintiff be provided with the following accommodations because of his disability:

        (a)     extended time;

        (b)     a quiet setting;

7

     (c)      advanced knowledge of the specific material covered on each section of the Exam;

     (d)      access to the reference material while taking the Exam;

     (e)      short breaks after every hour of the Exam; and

     (f)      that the Exam be presented in an essay format instead of the multiple choice format.

A true and correct copy of the letter from Dr. Slap-Shelton is attached hereto as Exhibit "C" and made a part hereof.

38.     On June 9, 2011, the ABP only allowed Plaintiff extended testing time, short breaks and an individual room for the Exam, but denied all other accommodations recommended by Dr. Slap-Shelton and refused to provide him with an alternative method of evaluation.  A true and correct copy of the June 9, 2011 Letter is attached hereto as Exhibit "D" and made a part hereof.

39.     These accommodations were insufficient to allow Plaintiff to demonstrate his aptitude in the field of pediatrics and, in October 2011, Plaintiff again failed the Exam.

40.     From July 2003 until October 2011, Plaintiff attempted to take the Exam five times; yet despite hundreds of hours spent studying, five intensive review courses and thousands of dollars invested, Plaintiff was unable to pass the Exam because of his cognitive disability.

## VIOLATION OF 42 U.S.C.A. § 12189

41.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth at length herein.

42.     Plaintiff is an otherwise qualified individual with a disability within the meaning of the ADA.

43.     Plaintiff's impairment substantially limits his cognitive ability which is only manifested in multiple choice test-taking.

44.     Title III of the ADA states in part, "[i]t is discriminatory to fail to make reasonable modifications to policies, practices and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. § 12182(b)(2(A)(ii).

45.     Specifically 42 U.S.C. § 12189 and 28 C.F.R. § 36.309 mandate that private entities that administer examinations related to the certification of professionals are required to provide reasonable accommodations or alternative arrangements for persons with disabilities to ensure that the examination results accurately reflect the individual's aptitude or achievement level rather than reflecting the individual's impaired sensory, manual or speaking skills.

46.     The ABP's refusal to allow Plaintiff's aptitude for pediatrics to be evaluated by some means other than a multiple choice test constitutes discrimination and a violation of Title III of the ADA.

47.     Plaintiff is an otherwise qualified pediatrician as he has met all of the requirements for Certification other than passing the Exam.

48.     Plaintiff will be irreparably harmed if the ABP continues its illegal refusal to provide Plaintiff with an alternate procedure for evaluation in that:

(a)     given his experience with the Exam, without a means of evaluation other than a multiple choice test, to which he is entitled under the ADA, Plaintiff is likely unable to show his aptitude for pediatrics and would not receive a score which will enable him to become board certified by the ABP;

(b)     plaintiff's career will continue to be placed on hold or forestalled without Certification;

(c)     plaintiff's employment and advancement opportunities have been and will be greatly impaired resulting in emotional distress and an impaired sense of self-worth;

(d)     requiring Plaintiff to take the Exam puts him at an illegal disadvantage given his disability;

(e)     reduced performance on the Exam as a result of not receiving an alternate evaluation process significantly reduces Plaintiff's future professional career options; and

(f)     taking the Exam would continue to be a waste of Plaintiff's time and money.

49.     The ABP has discriminated against and continues to discriminate against Plaintiff in violation of Title III of the ADA, specifically 42 U.S.C. § 12189 and 28 C.F.R. § 36.309 by failing to ensure that Plaintiff is provided with an equal evaluation process for Certification so as to be fairly situated with non-disabled applicants.

50.     Specifically, the ABP has offered Plaintiff insufficient modifications and in doing so has failed to best ensure that the examination measures Plaintiff's ability rather than disability and failed to engage in the mandated good faith interactive process in violation of Title III of the ADA and 28 C.F.R. § 36.309.

51.     As a result of the ABP's insensitivity to Plaintiff's disability, Plaintiff has suffered and endured humiliation, damage to his reputation, damage to his career, mental and emotional distress and/or pain, suffering and economic harm.

52.     Plaintiff has no remedy at law and will continue to suffer irreparable harm in the absence of injunctive relief.

WHEREFORE, Plaintiff, David Rawdin, respectfully requests that this Honorable Court grant any or all of the following remedies:

(a)      grant Plaintiff preliminary and permanent injunctive relief directing the ABP to award board certification to Plaintiff based on his passing of all requirements other than a multiple choice examination and allow Plaintiff to maintain Certification without ever having to take a multiple choice examination in the future; or

(b)      make a determination on Plaintiff's suitability for Certification based upon his passing of all requirements other than a multiple choice examination, plus recommendations from board certified pediatricians who have supervised his clinical practice at the Children's' Hospital of Pennsylvania;

(c)      make a determination on Plaintiff's suitability for Certification based upon his passing of all requirements other than a multiple choice examination, plus meeting any additional requirements that the Court determines are fair and equitable under the circumstances; and

(d)      award Plaintiff compensation for the loss of his salary and other benefits, including all fringe benefits to which he would have been entitled had his employment not been interrupted, in an amount in excess of $75,000.00;

(e)      award Plaintiff compensatory damages for humiliation, damage to his reputation, mental and emotional distress, and pain and suffering that he has experienced and endured as a result of the discriminatory actions of the ABP toward him;

(f)      grant Plaintiff prejudgment imposed interest on all damages awarded, to the maximum extent allowed by law;

(g)     grant Plaintiff his reasonable costs and attorneys' fees; and

(h)     grant such other and further relief as the Court deems just and proper.


MORRIS AND CLEMM, P.C.


Dated: *11-30-12*                    By: *Robert F. Morris*
                                         Robert F. Morris, Esquire
                                         Attorneys for Plaintiff

                                         527 Plymouth Road, Suite 416
                                         Plymouth Meeting, PA  19462
                                         Attorney I.D. Nos. 22706, 309486
                                         (610) 825-0500

RFM/Rawdin Davis/Pleadings/Complaint 12.06.07

# EXHIBIT A



FEDERATION OF STATE MEDICAL BOARDS
OF THE UNITED STATES, INC.

1999-2000
OFFICERS & DIRECTORS

PRESIDENT
ALAN E. SHUMACHER, MD
8950 GLOBULAR VALLEY
SAN DIEGO, CA
92108-3619

PRESIDENT-ELECT
GEORGE C. BARRETT, MD
1290 WESTERN AVE SE
CAMDEN, SC
29020-3194

VICE PRESIDENT
GEORGE V. VAN ROTEN, MD
745 EAST XO BOWL
SALT LAKE CITY, UT
96103-4280

TREASURER
BRUCE H. HASENKAMP, MD
960 HYDE STREET
SUITE 1208
SAN FRANCISCO, CA
99109-4608

SECRETARY
JAMES R. WINN, MD
400 FULLER WEBB ROAD
SUITE 300
EULESS, TX
76039-3855

IMMEDIATE PAST PRESIDENT
WILLIAM H. FLEMING, III, MD
7777 SW FREEWAY
SUITE 900
HOUSTON, TX
77074-1812

RONALD C. AGRESTA, MD
2315 SUNSET BLVD
SUITE 11
STEUBENVILLE, OH
43952-2260

OSRIE C. BROOKER, MD
BOX 388, USMC
HOMESTEAD, S. DAK
96489-0388

ROY JOSEPH,
1626 HOTEL AVENUE
SUITE 34
SACRAMENTO, CA
95039-3236

THOMAS D. KRAMER, MD
P.O. BOX 5048
AUSTIN, TX
76763-0548

WILLIAM MCCORD, JR., DO
500 WAXWOOD DRIVE
BRENTWOOD, TN
37027-5001

C. DAN E. W. MORRISSEY, DP
COLLEGE & MERCER ST
O HARE AVENUE-BAR9 327
NEW YORK, NY
10038-2652

STEPHEN L. SCHABEL, MD
669 SHORTWOOD STREET
CHARLESTON, SC
29412-9027

CHERYL E. WINCHELL, MD
4126 MONTGOMERY VILLAGE AVENUE
SUITE E-10
MONTGOMERY VILLAGE, MD
20886-9090

EXECUTIVE STAFF

JAMES R. WINN, MD
ECUTIVE VICE PRESIDENT

DALE L. AUSTIN, MA
DEPUTY EXECUTIVE
VICE PRESIDENT

PATRICIA BEATTY
SISTANT VICE PRESIDENT
VOLUNTCANS 8 EDUCATION

CAROL A. CLOTHIER
SISTANT VICE PRESIDENT
VOLATIONS & BOARD ACTION

DATA BANK SERVICES

SARAH M. MORISSETTE, MPA
SISTANT VICE PRESIDENT
EMBER SUPPORT SERVICES

November 29, 1999

<u>**Confidential**</u>
*Confirmation of Test Accommodations*

David E. Rawdin, MD
327 South 17th Street, Apt 2F
Philadelphia, PA 19103
(215) 546-5225

Re:    Test Accommodation Request received on 11/17/99 for the 1999/2000 Step 3 Examination.

Dear Dr. Rawdin:                                          USMLE ID #-4-011-996-8

**We will provide the following accommodations when you take the 1999/2000 USMLE Step 3:**

- **Extended testing time**: The exam is administered over four days of approximately 8 hours each. Testing *is* divided into blocks of approximately 1 hour each with about one-half the number of items per block than the standard exam. The total number of questions is the same as the standard time exam. Each day you will have 45 minutes of break time for rest breaks and lunch. If you complete the tutorial or an examination block in less time than allotted, you may use the extra time as break time.

> Your scheduling permit will be mailed under separate cover from our Examination Department and will contain all of the information that you need to schedule your examination. In order to facilitate scheduling of your exam, **please call Sylvan Prometric at the number listed on your scheduling permit as soon as you receive it.**

<u>INFORMATION ABOUT YOUR TEST ACCOMMODATIONS</u>
**To protect your confidentiality**, test center proctors do not have information about your accommodations. If you have any questions concerning your accommodations, please call the USMLE Office of Test Accommodations at (215) 590-9869.

**You may not change these accommodations** at the test center on your scheduling exam day. If you choose not to use these accommodations, *please notify the Federation of State Medical Boards* immediately for instructions on re-registering for your exam at (817) 571-2949.

<u>SCORE REPORTING</u>
As indicated in the Guidelines, your score report and transcripts of your scores (sent to third parties at your request) will note that this examination was administered with test accommodations.

Sincerely,

*Brian L. Wilsford*

Brian L. Wilsford
Coordinator, Special Exam Services

# EXHIBIT B

The American Board of Pediatrics
111 Silver Cedar Court
Chapel Hill, North Carolina 27514-1513


28 April 2011


To Whom It May Concern:

I am writing this letter in support of my application to take the 2011 American Board of Pediatrics Certifying Examination with test accommodations. This letter accompanies my supporting documents and letter from my neuropsychologist, Dr. Laura Slap-Shelton.

I was diagnosed with a cognitive disability back in 1996 that affects my standardized test taking which is such an "overemphasized" way of measuring one's mastery of training. I can make that statement as I have been at the top of my class in medical school, one of the top residents in my residency training and a well liked and well respected attending at a premier children's hospital. Yet, my reputation is preceded by a test of which my disability does not allow me to master to the extent that I have mastered and succeeded in my clinical career- a much more accurate measure of "certification." My disability, a result of a medical condition- an ependymoma- was resected surgically and followed with radiation and chemotherapy. This has left me over the years with a disability that is unique in the fact that it affects only my ability to retrieve information when presented with an objective multiple-choice exam. My clinical abilities are not affected as evidenced by my history/record over the past decade. And confirmed with neuropsychological testing twice over a 10 year period. What the testing has also revealed was that my cognitive disability of memory and retrieval is limited to the test like situation as presented with on the ABP exam.

I have taken the ABP exam four times since 2003 and have failed each time. I did not ask for accommodations for these exams, as I was certain that nothing that my doctor and I discussed would help. Knowing how the test was administered and my experience with taking the test, I could not see any accommodations that would help me overcome my disability and increase my chances of passing. This is such a unique and focal disability. Therefore, I put myself through rigorous studying, practicing taking multiple-choice exams and attending multiple review courses but none of this helped. I am now out of a job and since my career is being determined by a multiple choice exam of approximately 330 questions and not by my clinical abilities and history, I am forced to once again try and pass an exam that is counter to my documented disability. It is for this reason that I am now asking to take the exam with accommodations.

My doctor has listed the accommodations that she and I feel would help me to have the best chance of finally succeeding in passing the exam. There is no guarantee and I would hope that the ABP recognizes this and my disability. I have already been in contact with the board and have reviewed my situation with them. As stated in earlier correspondence, I do agree and believe there has to be some way to measure one's ability and mastery of the material they are learning in order to become a successful and trusted physician. I truly believe that this "measure" is best done by continual learning, experience, and constructive criticism by colleagues, patients, and self-evaluation. All of which I have performed and received over the years as a clinical practitioner. A single test cannot measure this.

I ask the boards again to look at this and at my situation  And realize that a disability is not being accommodated for by issuing an exam to someone who has proven himself over and over as worthy of "certification." In addition, a licensed ~~neuro~~psychologist that attests to the disability has documented this. This is not meant to be negative or to invoke judgment. It is merely a plea to acknowledge an injustice that needs to be corrected. And if it takes an attempt to pass an exam with accommodation, I will submit to this as my career is too important to have someone else- the ABP- dictate whether or not I have a career. What happens as a result of making me take the exam will be found out soon enough.

Thank you for your time and consideration,

David E. Rawdin
417 Merion Place
Merion Station, Pennsylvania 19066
215.738.8466

# American Board of Pediatrics
## Test Accommodation Request Form – New Request

Requests must be supported by documentation from a qualified professional. Review of a request for test accommodations will be deferred until complete documentation is received. Submission of incomplete information will slow the processing of your request.

Send your completed form with supporting documentation by the final published application deadline to: American Board of Pediatrics, 111 Silver Cedar Court, Chapel Hill, NC 27514.

**Please type or print.**

Accommodations are requested for the following examination: **General Pediatrics Certification**   Year: **2011**

1. Name: **RAWDIN**   **DAVID**   **E**
   Last       First       Middle Initial

2. Address: **417**   **MERION PLACE**
   Number       Street

   **MERION STATION**   **PA**   **19066**
   City       State/Province       Zip Code

   **USA**
   Country

   **215·738·8466**       **215·738·8466**
   Daytime Telephone       Mobile Telephone

   **DRDERAWDIN @ AOL·COM**
   E-mail Address

3. Social Security #: **176·58·8262**

4. Nature of Disability:

   ☐ Visual Disability
   ☐ Hearing Disability
   ☐ Learning Disability

   ☐ Physical Disability
   ☐ Psychiatric/Mood Disorder
   ☐ Attention Deficit/Hyperactivity Disorder
   ☑ Other **Cognitive Disorder NOS**

5. In order to document your need for accommodation(s) as completely as possible, please attach, in addition to professional documentation, a personal statement describing your disability and its impact on your daily life and educational functioning.

6.  How long ago was your disability first professionally diagnosed?

    ☐ less than 1 year          ☐ 1-2 years          ☐ 2-4 years          ☑ 5 or more years

7.  What accommodation(s) are you requesting? Accommodation(s) must be appropriate to your disability.
    (Check all that apply):

    ☐ Assistance with Marking Answers

    ☐ Rest breaks with no extended testing time

    ☐ Extended Testing Time
        Amount requested as supported by your documentation_____

    ☐ Enlarged print or screen magnification

    ☐ Audio Rendition

    ☐ Individual Testing Room (for those whose disability necessitates separation from all other
        examinees)

    ☐ Special Physical Accommodations at the site
        (Special lighting, chair, etc.) _____

    ☑ Other   _see attached letter from Dr Laura Slap-Shelton_

8.  Do you require wheelchair access at the examination facility?      ☐ Yes      ☑ No

9.  **Paper and pencil testing**:

    Test sites are arranged for applicants who are granted test accommodations. The test sites are usually in
    accredited general pediatrics residency programs under the supervision of a pediatric program director. Please
    provide the ABP with three cities, in rank order, where you would prefer taking the examination if you are
    approved for test accommodations. An accredited general pediatrics training program must be located in each
    city.

    First Site Preference   _Philadelphia_

    Second Site Preference  _Chicago_

    Third Site Preference   _Pittsburgh_

    If you are not approved for test accommodations, you will be assigned to a test site as all other applicants for
    this examination.

    **Examinations administered at computer testing centers:**

    Applicants will select a testing center after a decision has been made on the test accommodation request.

10. Prior classroom or test accommodation(s) that you have received:

<u>Standardized Examinations</u> (Check all that apply)
**Attach documentation showing the accommodations granted when the examination was administered.**

☐ Medical College Admission Test (MCAT)

Month/Year _____

Accommodation(s) received_____

☑ United States Medical Licensing Exam (USMLE)

Month/Year _1999/2000_ *step 3*

Accommodation(s) received_*extended testing time*_

☐ Other _____

Month/Year _____

Accommodation(s) received _____

<u>Medical School/Residency</u>          ☐ Yes        ☑ No

If yes, provide a statement from your medical school and/or residency training program explaining the type of accommodations made and date approved.

<u>College</u>          ☐ Yes        ☑ No

If yes, accommodation(s) received: _____

11. Authorization:

I certify that the above information is true and accurate. If testing accommodations granted to me include a deviation from the standard testing time schedule, I agree that, from the time I begin the examination until I have completed it, I will not communicate in any way, to the extent possible, with any other individuals taking the examination and I will not communicate in any way with any such individuals about the content of the examination.

Signature _____          Date _2 May 2011_

If clarification or further information regarding the documentation provided is needed, I authorize the ABP to contact the professional(s) who diagnosed the disability and/or those entities which have provided me test accommodations. I authorize such professional(s) and entities to communicate with the ABP in this regard to provide ABP with such clarification and/or further information.

Signature _____          Date _2 May 2011_

# EXHIBIT C

Laura Slap-Shelton, Psy. D.
Licensed Psychologist
28A West Cole Road
Biddeford, Maine 04005

Tel: 207-294-7471
Fax: 207-294-7470

Neurofeedback Psychotherapy
Neuropsychological Evaluation
Psychological Evaluation

5-2-2011

Dear American Board of Pediatrics,

I am writing this letter on behalf of David Rawdin, M.D., whom I have
had the pleasure of evaluating with neuropsychological testing on two
occasions, once in 1996, and again in 2007.  Dr. Rawdin has served
successfully at the Children's Hospital (CHOP) as the Assistant Director
of their Nursery for five years and also as a professor in the University
Of Pennsylvania School Of Medicine. In addition to being on faculty, he
was part of the Academic Clinician Tract at the University Of
Pennsylvania School Of Medicine.  Despite his professional success, he
has, due to unique medical conditions resulting from surgical and other
treatment for a brain tumor, not been able to pass his Pediatric Boards,
despite significant efforts on his part. Despite his professional success in
one of the most respected children's hospitals in the country, and his
repeated attempts to pass the Pediatric Boards, he was asked to leave
his position in early 2010 due to his inability to pass the Boards and for
no other reason.
        Dr. Rawdin's DSM-IV TR diagnoses from his most recent
neuropsychological evaluation conducted on October 22 and 23, 2007
are as follows:

Axis I:
Cognitive Disorder NOS
Axis II: Deferred

Re: Dr. David Rawdin

Axis III: History of Posterior Fossa Ependymoma with two surgical resections; chemotherapy treatment and two courses of radiation treatment; hearing loss secondary to chemotherapy and radiation treatments; left cerebellar encephalomalacia; cervical spinal fusion; radiation induced mucositis effecting his middle ear, bilaterally.
Axis IV: Difficulty in pursuing his career secondary to difficulty passing Pediatric Boards
Axis V: 65

Please refer to the detailed summary of the tests administered, his testing results and conclusions in the attached evaluations. Overall, Dr. Rawdin demonstrates ongoing neurocognitive impairment effecting his verbal retrieval, visual memory, and his visual fine motor functioning. He demonstrated a further decline in his memory from 1996 to 2007 likely related to further medical interventions and medical complications. Dr. Rawdin's memory retrieval impairments appear to particularly affect his ability to be successful in when asked to retrieve previously learned information when there is limited context provided, a skill required when taking multiple choice tests in a timed setting. Additionally, he is susceptible to fatigue under the type of testing conditions provided by the Pediatric Boards. Dr. Rawdin's testing indicates that he has strong thinking abilities and his history indicates that his condition does not negatively impact his ability to function as a physician.

Dr. Rawdin's difficulties with taking lengthy multiple-choice tests are related to his memory impairment and overall brain dysfunction. Based on his neuropsychological evaluation, I am recommending the following accommodations:

1)    Double time for testing in order to allow Dr. Rawdin time to process the testing questions and remember information needed to assess the possible choices.

2)    Testing in a quiet setting in which Dr. Rawdin is able to read the questions aloud to himself to support his processing of them and his ability to retrieve the information he needs to retrieve to answer the questions.

3)    In order to support Dr. Rawdin's impaired memory he will require advanced knowledge of the material to be covered on each part of the examination. He should have

Re: Dr. David Rawdin

access to reference material to support his memory when taking the examination.

4) Dr. Rawdin should have a short break every hour when taking the tests, and should not spend more than four hours a day taking the tests due to his susceptibility to mental fatigue.

5) Consideration of creating an essay like test format which is case based as an alternative to the multiple choice format is recommended as a possible accommodation which would allow Dr. Rawdin to demonstrate his medical knowledge.

Sincerely,

Laura Slap-Shelton, Psy.D.
Licensed Psychologist

3

# EXHIBIT D

# *The American Board of Pediatrics*



111 Silver Cedar Court, Chapel Hill, North Carolina 27514-1513
Phone:(919) 929-0461 • Fax:(919) 929-9255 • E-mail:abpeds@abpeds.org • Web Site:www.abp.org



*2·0·1·1*

*Board of Directors*

Alan R. Cohen, MD
*Chair*

Marshall L. Land Jr., MD
*Chair-Elect*

A. Craig Hillemeier, MD
*Secretary-Treasurer*

M. Douglas Jones Jr., MD
*Immediate Past Chair*

James A. Stockman III, MD
*President and CEO*

Gail A. McGuinness, MD
*Executive Vice-President*

Douglas J. Barrett, MD
Laura M. Brooks, MD
Mary Fran Hazinski, MSN
David M. Jaffe, MD
Thomas G. Keens, MD
Laurel K. Leslie, MD
Stephen Ludwig, MD
Dana C. Matthews, MD
Virginia A. Moyer, MD
David G. Nichols, MD
Kenneth B. Roberts, MD
Joseph W. St. Geme III, MD

*Vice-Presidents*

Linda A. Althouse, PhD
H. James Brown, MD
Hazen P. Ham, PhD
Ann E. Hazinski, MBA, CPA
Paul V. Miles, MD
Michele J. Wall, MA

June 9, 2011

***Confidential***

Dr. David E. Rawdin
417 Merion Place
Merion Station, PA  19066

Dear Dr. Rawdin:

Your request for test accommodations under the Americans with Disabilities Amendments Act (ADAA) has been reviewed by the American Board of Pediatrics (ABP).  Your requests for double testing time and an individual test room have been approved.  The requests by Dr. Laura Slap-Shelton in her letter of May 2, 2011 for you 1) to receive advanced knowledge of the material to be covered on the examination and 2) to have access to reference material when taking the examination cannot be granted.  You are encouraged to review the content specifications found on the ABP Web site, www.abp.org  as this document provides a list of the topics that may be present in the examination material.  In addition, an essay examination cannot be substituted for the current multiple choice examination.

Therefore, the specific requests which are approved are:

1) Double test time with a ten minute "off the clock" break each hour
   (There will be a total of 3 ten minute "off the clock" breaks)
2) Test time will be 3.5 hours each day with additional time required to read instructions and an additional 30 minutes to allow for the "off the clock" breaks
3) Individual test room

The examination will be administered Monday through Thursday, October 10-13, 2011.  We will ask the program director at St. Christopher's Hospital for Children to make the test arrangements for you. If you agree with these arrangements, please indicate so and return the signed form by facsimile or email.

Sincerely,

*Gail A. McGuinness*

Gail A. McGuinness, M.D.
Executive Vice-President

GAM:pru

Please check below:

___✓___  I agree to have the testing arrangements described above.
_____  I do not wish to have the arrangements stated above.  Please note changes:

Signature _____     Date 16 JUN 11